**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOEL BYRD, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:20-cv-3613 |
| v. | ) | |
| | ) | Hon. Sara L. Ellis |
| CHICAGO TRANSIT AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

## JOINT MOTION FOR APPROVAL OF FINAL SETTLEMENT AGREEMENT

Plaintiffs, Joel Byrd, John A. Perkovich, Joseph J. Wright, Louis J. Gordon, Michael Keele, Pedro Luna, Robert J. Cooper, and all others similarly situated (collectively, "Plaintiffs"), and Defendant, Chicago Transit Authority ("CTA"), (collectively "the Parties"), by and through their respective attorneys, jointly move this Court for an order approving the Parties' Proposed Final Settlement Agreement. In support thereof, the Parties state as follows:

### BACKGROUND

1.      Plaintiffs commenced this action on by filing their Complaint on June 19, 2020, alleging that CTA violated the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL"), in connection with CTA's alleged failure to include Shift Differential Pay amounts in the calculation of the regular rate of pay for purposes of calculating overtime rates for the Named Plaintiffs and others similarly situated. (Dkt. 1). CTA denied those alleged statutory violations. (Dkt. 15).

2.      Since the Complaint was filed, the Parties have engaged in written discovery, review of CTA's payroll records and practices, and extensive settlement discussions and arms-length negotiations. Those negotiations resulted in the acceptance and execution of a Tentative Agreement and Framework for Settlement ("Tentative Agreement") on or about August 9, 2021.

3.     Pursuant to the terms of the Tentative Agreement, and in order to facilitate the Parties reaching an amicable resolution of the claims asserted in the Complaint, the Parties have undertaken various steps in order to address the alleged issues relating to the calculation of overtime pay, and to calculate the amounts of overtime pay which the Named Plaintiffs seek to recover on behalf of themselves and all others similarly situated

4.     Pursuant to the Tentative Agreement, on October 6, 2021, the Parties filed a Joint Motion for Entry of Order Certifying Collective Action Status and Approving Agreed Notice of Collective Action, Plaintiffs' Consent Form and Opt-In Procedure. (Dkt. 39). The Court granted that Motion on October 13, 2021. (Dkt. 41).

5.     In its Order, the Court certified a conditional class of collective Plaintiffs under the FLSA and IMWL for purposes of Counts I and II of the Complaint defined as follows:

> All current and former employees of CTA who, at any time from the period of June 19, 2017, to the present, (a) were members of any one of the bargaining units represented by the 11 Coalition unions or by Teamsters Local 700, (b) worked on a second or third shift, and (c) worked more than 40 hours in at least one workweek.

The Court also approved the Parties' proposed procedures for providing notice to putative collective members, including authorizing a 90-day deadline (by January 11, 2022) for individuals to return their signed opt-in consent forms; approved the Parties' proposed opt-in forms; and tolled the limitations period such that all opt-in consent forms would be deemed to have been filed as of June 19, 2020. (Dkt. 41).

6.     Pursuant to the Court's Order granting the Motion for Conditional Certification, Plaintiffs sent notice to all putative collective members, and in response received 150 signed consent forms which were deemed timely. (Dkt. 47, 48, 54). Two of the individuals who submitted signed consent forms did not qualify as part of the class conditionally certified by the Court, as they were not part of any of the covered collective bargaining agreements, so their consents have

been withdrawn. (Dkt. 85). In addition to the seven consent forms previously filed by the Named Plaintiffs (Dkt. 1-1 through 1-7), the conditionally-certified collective includes 155 individuals.

7.     Pursuant to the Tentative Agreement, the Parties' counsel worked together to reach an agreement on the correct formulas to be used to calculate CTA employees' overtime rates of pay to incorporate Shift Differential Pay as appropriate. Counsel for the Parties also worked together to identify changes to be made to CTA's Payroll practices in order to address the alleged violations stated in the Complaint, which were implemented around January 2023.

8.     Pursuant to the Tentative Agreement, the Parties retained, at CTA's expense, a third-party auditor to review various pay and time records and, consistent with instructions drafted and agreed upon by counsel for the Parties, to calculate the amount, if any, of overtime pay alleged to be owed to each and every Plaintiff. That report was submitted to the Parties on or about July 12, and after some errors were identified and addressed, an amended final report was submitted on or about August 18, 2023. The Parties reviewed that report and confirmed, to a high degree of certainty based on sampling, that the data utilized and the calculations included are accurate.

9.     Now that the Parties have received the final calculations for the amount of overtime pay alleged to be owed to all Plaintiffs, they have reached an agreement to resolve this lawsuit. That agreement is memorialized in the Proposed Final Settlement Agreement ("Proposed Settlement"), attached hereto as Exhibit 1.

**GROUNDS FOR APPROVAL OF PROPOSED SETTLEMENT**

10.     Through this Motion, the Parties seek the Court's approval of their Proposed Settlement. In most civil actions brought in federal court, settlement agreements are not subject to judicial oversight, scrutiny, or approval. However, courts have recognized that "[t]he FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working

hours." *Salcedo v. D'Arcy Buick GMC, Inc.,* 227 F. Supp. 3d 960, 961 (N.D. Ill. 2016) (quoting *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352 (11th Cir. 1982); *Barrentine v. Arkansas–Best Freight System*, 450 U.S. 728, (1981)). "Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory." *Id.* As a result, the provisions of the FLSA "are not subject to negotiation or bargaining between employers and employees." *Id.* (citation omitted).

11.    "For this reason, settlement of claims for back wages under the FLSA require approval from the Department of Labor or from a district court." *Id.*; *see also Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (noting that wholly-private settlements under the FLSA could allow parties to establish sub-minimum wages). Not all Circuit Courts have adopted a mandatory rule that FLSA settlements receive court approval; however, this Court and other District Courts within the Seventh Circuit regularly require such approval. *See, e.g., Kujat v. Roundy's Supermarkets Inc.,* 2021 WL 4551198, at *1 (N.D. Ill. Aug. 11, 2021).

12.    "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kujat,* 2021 WL 4551198, at *1 (citing *Lynn's Food Stores,* 679 F.2d at 1355; *Furman v. At Home Stores LLC*, 2017 WL 1730995 at *1 (N.D. Ill. May 1, 2017)). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the Settlement." *Id.*

13.    In determining whether the proposed settlement is fair and reasonable, the Court should also consider the reasonableness of the attorneys' fees sought. *Binissia v. ABM Indus., Inc.,* 2017 WL 4180289, at *2 (N.D. Ill. Sept. 21, 2017). In FLSA actions, the Seventh Circuit has made clear that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,"

known as the "lodestar." *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)).

14.    "It is a well settled principle that the law generally encourages settlements." *Kujat,* 2021 WL 4551198, at *1 (quoting *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979)).

15.    Some courts have held that "[w]here the parties reach settlement after a court has conditionally certified a collective class, the court still must make some final class certification before approving a collective action settlement." *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 993 (N.D. Ind. 2010) (collecting cases). For this reason, the Parties also request an order granting final certification for the collective that has was previously conditionally certified.

16.    **<u>Scope of the Proposed Settlement</u>**. The Plaintiffs in this case are current and former employees of CTA who meet the criteria set forth in Paragraph 5, above, describing the conditionally-certified class in this case. The time period covered by the Proposed Settlement is June 19, 2017 (three years prior to the filing of the Complaint, which is the maximum limitations period under the FLSA for alleged "willful" violations of the Act), through January 29, 2023 (the date upon which CTA implemented changes to its Payroll system and practices that the Parties mutually negotiated in order to ensure that overtime rates with Shift Differentials are correctly calculated moving forward). The Proposed Settlement does not apply to or impact the rights of any person who did not voluntarily consent to join this lawsuit.

17.    **<u>Description of the Litigation</u>**. Throughout the course of this litigation, the Parties have maintained an arm's-length relationship and course of dealing with one other. After filing their respective pleadings, both Parties initiated written discovery. However, in order to reduce the amount of attorney time and expenses involved in conducting large-scale written discovery, which would involve the review of tens of thousands of pages of payroll and other paper and electronic

records, as well as oral discovery, the Parties agreed to retain a third-party auditor, at CTA's expense, to review the relevant payroll records and to perform all mathematical calculations to determine the alleged damages sought by Plaintiffs.

18.     In the interest of minimizing the accrual of unnecessary expenses and attorneys' fees, Plaintiffs have limited discovery to only those documents necessary to determine the extent of Defendants' monetary exposure in this case for settlement purposes, and have utilized accounting experts to review those records rather than having Plaintiffs' counsel perform the review and calculations. In the absence of this Court's approval of the Proposed Settlement, all Parties would need to complete written discovery and then conduct any necessary depositions concerning the disputed factual issues.

19.     ***Bona Fide* Dispute.** The Parties' Proposed Settlement is a fair and reasonable resolution of a *bona fide* dispute over wages under the FLSA. Through their written discovery responses in this case, CTA admitted some of the material facts, including Plaintiffs' allegation that all applicable Second and Third Shift Differentials should be included in each CTA employee's regular rate of pay for purposes of calculating overtime under the FLSA. However, CTA denied some of the factual allegations at issue, including specifically the allegation that CTA's violations of the FLSA were "willful." (Dkt. 15, ¶ 33). CTA also has denied the ultimate allegation that it violated the FLSA and has raised several affirmative defenses to the Complaint. (Dkt. 15, p. 15). Plaintiffs contest all defenses raised by CTA.

20.     **Accuracy and Sufficiency of the Settlement.** This is not a case in which the accuracy and sufficiency of the settlement is in question. Pursuant to the Parties' Tentative Agreement, the Parties retained experts to review the voluminous payroll records relevant to Plaintiffs' claims. Those auditors prepared final reports calculating the total amount of overtime

wages alleged to be owed to each Plaintiff. Counsel for the Parties reviewed those reports for accuracy and have concluded to a high level of certainty that they are accurate. Summaries of the auditors' reports and their final calculations are attached to the Proposed Settlement as Exhibit B.

21.     As a result of this expert analysis, the Parties have been able to accurately assess the value of the claims for each Plaintiff and have incorporated those numbers into the Proposed Settlement, which supports the approval of the Settlement. *See, e.g., Houston v. URS Corp.,* 2009 WL 2474055, at *5 (E.D.Va. Aug. 7, 2009) ("When a settlement agreement has been the subject of arms-length bargaining, with class counsel in a position to evaluate accurately the chances of the class prevailing if the case went to trial and where no objections are raised by any of the affected parties, there is a strong presumption in favor of the settlement.").

22.     In this case, the Parties have agreed that each Plaintiff shall be paid the full amount of FLSA overtime that the auditors calculated as due during the relevant time period of June 19, 2017, through January 29, 2023. (Ex. 1, ¶ 3(a)(1), (b)). As previously noted, this includes a three-year lookback period from the date the Complaint was filed, which is the maximum period covered by the Complaint. The limitations period for a claim for unpaid overtime compensation under the FLSA is two years for non-willful violations, and three years for "willful" violations. 29 U.S.C. § 255. CTA denies that it willfully violated the FLSA. (Dkt. 15, ¶ 33).

23.     In addition to the overtime compensation to be paid, the Parties have agreed that each Plaintiff shall receive payment of liquidated damages equal to the amount of overtime compensation owed for this time period. (Ex. 1, ¶ 3(a)(2), (b)). "The FLSA presumptively authorizes the district court to award liquidated double damages against employers who violate the FLSA." *Bankston v. State of Ill.,* 60 F.3d 1249, 1254 (7th Cir. 1995) (citing 29 U.S.C. § 216(b)). "The employer bears a substantial burden in showing that it acted reasonably and with good faith."

*Id.* These presumed liquidated damages are calculated as "double damages," meaning they are equal to the amount of overtime compensation recovered. *See, e.g., Perez v. Super Maid, LLC,* 55 F. Supp. 3d 1065, 1080 (N.D. Ill. 2014).

24.     For some of the individuals who were identified as putative collective class members and who opted in to the lawsuit, the total amount of overtime compensation calculated by the auditors as being owed under the FLSA was zero dollars, or just slightly above zero dollars. In order to ensure that all Plaintiffs who are party to this lawsuit would be bound by the Proposed Settlement and the release included therein, the Parties agreed that CTA would make a minimum payment of $300 to each of these individuals. (Ex. 1, ¶ 3(c)). That valuable compensation is more than these individuals would be able to recover if their claims had proceeded to trial.

25.     The Proposed Settlement also provides for payment of "service payments" to the seven Named Plaintiffs in the amount of $3,000 each for their participation as authorized representatives of all Plaintiffs in this matter. (Ex. 1, ¶ 3(d)). Service payments or "incentive payments" to individuals who act as collective representatives in FLSA suits "serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Briggs v. PNC Fin. Servs. Grp., Inc.,* 2016 WL 7018566, at *2 (N.D. Ill. Nov. 29, 2016).

26.     In this case, the Named Plaintiffs took substantial actions to protect the interests of the collective group and to prosecute these claims to the benefit of the entire collective. The Named Plaintiffs engaged in pre-suit investigation and provided information and records to Plaintiffs' counsel to build Plaintiffs' case; they each responded to written discovery requests, and were noticed to be deposed before the Parties reached an understanding to limit the scope of discovery;

8

they have been engaged in discussions with Plaintiffs' counsel at every step of the litigation to review and approve the various steps towards settlement; and they have provided updates to and from the other opt-in Plaintiffs about the status of the lawsuit. Based on these efforts, the amount of service payments included in the Proposed Settlement is fair and reasonable. *See Briggs,* 2016 WL 7018566, at *2 (approving service payments in the amount of $12,500 per named plaintiff, and noting that courts in the Seventh Circuit and others regularly approve such payments ranging from $5,000 to $25,000 for similar activities).

27.     Because the Proposed Settlement includes payment in full of all unpaid overtime compensation plus liquidated damages to each Plaintiff, the individual Plaintiffs are recovering the amount that they would likely recover were this matter to proceed to trial and they were to prevail at trial. As a result, there should be no question that the payments to the Plaintiffs are fair and reasonable. *See Luker v. Wilcox Hosp. Bd.,* 2014 WL 3518386, at *1 (S.D. Ala. July 16, 2014) ("Because plaintiff[s'] FLSA back wage claim[s] [are] effectively being paid in full, the Court [should have] no reservations about accepting that aspect of the settlement agreement as fair and reasonable." (citing *Bonetti v. Embarq Management Co.,* 715 F.Supp.2d 1222, 1227 (M.D. Fla. 2009)). The fact that the employees will be paid in full undercuts any concern that the employer may have coerced the employees into settlement and waiver of their claims.

28.     This is a straightforward settlement that does not require injunctive or other equitable relief in the form of corrective action concerning the CTA's future payroll practices.  The Parties worked together to identify changes that were made to CTA's Payroll system and practices in order to ensure that a similar issue does not reemerge in the future. Those changes are recognized and incorporated into the Proposed Settlement. (Ex. 1, ¶ 8).

29.     Another factor favoring approval of the Proposed Settlement is the fact that it does not contain the pitfalls that can commonly plague FLSA settlements, such as a global release of claims, an overreaching confidentiality commitment, or a non-disparagement provision. *See Abrar v. 7-Eleven, Inc.,* 2016 WL 1465360 (E.D.N.Y. Apr. 14, 2016) (citing *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015)). The release language is narrowly tailored to only cover the specific claims raised in this Complaint. (Ex. 1, ¶ 10).

30.     **Attorneys' Fees**. Under the Parties' Proposed Settlement, CTA has agreed to pay Plaintiffs' counsel's firm a total of $240,689.43 in attorneys' fees and costs. (Ex. 1, ¶ 7). Plaintiffs' counsel has accrued a total of $237,464.58 in fees and $3,224.85 in costs in this case (for a combined total of $240,689.43).   For the reasons that follow, the Court should find that Plaintiffs' attorneys' fees are reasonable.[1]

31.     The FLSA is a fee-shifting statute. Under 29 U.S.C. §216(b), "[p]revailing plaintiffs, which may include plaintiffs who favorably settle their cases, are entitled to reasonable attorneys' fees under the FLSA." *Small v. Richard Wold Medical Insurance Corp.,* 264 F.3d 702, (7th Cir. 2001); *Connolly v. National School Bus Serv.,* 177 F.3d 593, 595 (7th Cir. 1999).  Thus, the general rule is that an attorney's fee must be reasonable. *See Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *see also Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999) (applying rule of *Hensley* in the context of fees awarded pursuant to the FLSA).  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably

---

[1] This analysis is a somewhat abbreviated version of a longer analysis that would occur in the context of a contested fee petition in the FLSA context.  This analysis is abbreviated because the reasonableness of Plaintiffs' attorneys' fees is not contested in the instant joint motion and a fully comprehensive analysis would be significantly more time-consuming.

expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433; *Spegon*,175 F.3d at 550. The product of that multiplication is the "lodestar" amount. *Id.*

32.     After the lodestar amount has been calculated, the district court has the discretion to adjust the amount up or down to consider various factors – known as the "*Hensley* factors" – regarding the litigation. Those factors include:

> [T]he time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the preclusion of employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases.

*Spellan v. Bd. of Educ. for Dist. 111,* 59 F.3d 642, 645 (7th Cir. 1995); *Hensley*, 461 U.S. at 436, n.9 (citation omitted).

33.     Many of the *Hensley* factors are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate, in which case the Court need not give them separate consideration. *See Hensley,* 461 U.S. at 436, n.9; *Heder v. City of Two Rivers,* 255 F.Supp.2d 947, 953 (E.D. Wis. 2003) (citing *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310-11 (7th Cir. 1996)). District courts may not reduce or augment the lodestar amount arbitrarily. *Spellan*, 59 F.3d at 645.

34.     To determine whether Plaintiffs' fees are reasonable, this Court must first calculate the lodestar amount, which, as noted above, is determined by multiplying the number of hours reasonably expended by Plaintiffs' counsel on this litigation by a reasonable hourly rate. Thus, the Court first determines whether the hours expended by Plaintiffs' counsel are reasonable. Next, the Court determines whether the hourly rates sought by Plaintiffs' counsel are reasonable.

35.     The hours expended by Plaintiffs' counsel in the prosecution of this case are reasonable. As set forth in the Attorney Declaration of Matt Pierce ("Pierce Dec."), attached hereto

as Exhibit 2, and as detailed in Paragraph 38, below, Plaintiffs expended a total of 637.50 hours on this matter between October 2019 and September 2023 (including 25 hours that, as of October 4, 2023, were attributed to estimated future attorney time).

36.     At every step of this litigation, Plaintiffs' counsel made efforts to minimize the accrual of unnecessary attorneys' fees and costs. Plaintiffs' counsel recognize that their attorneys' fees could potentially exceed the amount of wages at issue in this matter, which is not uncommon in FLSA lawsuits. For this reason, courts have recognized that proportionality between fees and damages is not required in the FLSA context. *See Hodgson v. Miller Brewing Co.,* 457 F.2d 221, 228-29 (7th Cir. 1972) ("To hold otherwise would in reality prevent individuals with relatively small claims from effectively enforcing their rights."). And "[g]iven the nature of claims under the FLSA, it is not uncommon that attorneys' fee requests will exceed the amount of the judgment in the case." *Holyfield v. F.P. Quinn & Co.,* 1991 WL 65928, at *1 (N.D.Ill. Apr.22, 1991); *Garcia v. RJB Properties, Inc.,* 756 F.Supp.2d 911 (N.D. Ill. 2010).

37.     To further minimize the accrual of attorneys' fees, the Parties reduced the scope of discovery for the purpose of securing only the information necessary to prepare an accurate settlement demand. Further, Plaintiffs' counsel was able to resolve discovery issues directly with CTA's counsel via telephone and Zoom conferences, without engaging in unnecessary and costly motion practice.  Once the Parties agreed to the scope of discovery needed to calculate the total potential liability in this case, Plaintiffs agreed to submit those records to a third-party expert, whose knowledge and experience was able to reduce the total amount of time that Plaintiffs' counsel would have otherwise spent poring over thousands of pages of payroll records and compiling complicated spreadsheets to calculate damages. For these reasons, the Court should find that the hours expended on this matter are reasonable.

38.     The hourly rates sought by Plaintiffs' counsel are reasonable in light of their experience and expertise in labor and employment matters, including matters involving the FLSA, and in light of prior orders issued by this Court and other district courts. Those rates are summarized in the attached Attorney Declaration. The total breakdown of time expenditures performed by Plaintiffs' counsel in this case, and the applicable hourly billing rate for each attorney (as set forth in Pierce Dec., ¶ 23), is as follows:

| Timekeeper | Time Period | Hourly Rate | Hours | Total Fees |
|---|---|---|---|---|
| Margaret Angelucci | 10/9/19-present | $475 | 21.75 | $10,331.25 |
| Ryan Hagerty | 10/9/19-present | $475 | 5.25 | $2,493.75 |
| Joe Weishampel | 10/9/19-present | $300 | 3.75 | $1,125.00 |
| Law Clerk | 10/9/19-present | $100 | 9.25 | $925.00 |
| Amanda Clark | 10/9/19-12/31/19 | $325 | 3.50 | $1,137.50 |
| | 1/1/20-12/31/20 | $350 | 41.00 | $14,350.00 |
| | 1/1/21-12/31/21 | $375 | 73.33 | $27,500.00 |
| | 1/1/22-12/31/22 | $400 | 73.25 | $29,300.00 |
| | 1/1/23-present | $425 | 58.17 | $24,720.83 |
| Matt Pierce | 10/9/19-6/30/20 | $300 | 7.75 | $2,325.00 |
| | 7/1/20-12/31/20 | $325 | 74.50 | $24,212.50 |
| | 1/1/21-12/31/21 | $350 | 106.75 | $37,362.50 |
| | 1/1/22-12/31/22 | $375 | 80.75 | $30,281.25 |
| | 1/1/23-present | $400 | 78.50 | $31,400.00 |
| | | **TOTAL** | **637.50** | **$237,464.58** |

39.     The rates charged in this case are consistent with the rates charged by Plaintiffs' counsel and approved by district courts in other cases, including this Court. The Seventh Circuit has held that "[a] reasonable hourly rate should reflect the attorney's market rate, defined as 'the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.'" *Small*, 264 F.3d at 707 (*quoting Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 407 (7th Cir. 1999)). "The attorney is entitled to his market rate and not some 'medieval just price' determined by the court." *Small*, 264 F.3d at 707 (*citing In re Continental Illinois Securities Litigation*, 962 F.2d 566, 568 (7th Cir. 1992)). As that Court explained:

> The attorney's actual billing rate for comparable work is considered to be the presumptive market rate. If, however, the court cannot determine the attorney's true billing rate – such as when the attorney maintains a contingent fee or public interest practice – the applicant can meet his or her burden by submitting affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work, or by submitting evidence of fee awards that the applicant has received in similar cases.

*Small*, 264 F.3d at 707 (citing *Uphoff*, 176 F.3d at 407).

40.     The expenses incurred in this case, including the court filing fee, administrative costs for mailing out notices to all putative collective members, and various research expenses, total $3,224.85 (which includes $2,563.35 of past expenses and $661.50 of estimated future expenses for printing and mailing the Settlement Agreement). (Pierce Dec., ¶ 25). Thus, the total attorneys' fees and expenses incurred in this case total $240,689.43. (*Id.*).

41.     In examining the fees and costs paid in this case in light of the Lodestar Amount, the Court should find that such fees and costs are reasonable. There is no occasion for a downward adjustment under the *Hensley* factors. One of the most important considerations to be made under the *Hensley* factors is the degree of success obtained. Here, Plaintiffs are recovering all of the wages and liquidated damages likely to be awarded for their FLSA claims if they were to succeed on every issue at trial, in addition to the minimum payments and service fees to be paid to the eligible Plaintiffs. These are important considerations that support approval of the reasonableness of Plaintiffs' attorneys' fees.

42.     Another factor that supports such approval is the fact that Plaintiffs' attorneys took this case on a contingency basis. Courts have held that the contingent nature of the fee may be considered when calculating the reasonable hourly rate to provide an allowance for contingent risks assumed by the attorney. *United Slate v. G & M Roofing & Sheet Metal Co.,* 732 F.2d 495, 503 (6th Cir. 1984); *see also Hensley,* 461 U.S. at 436, n.9; *Spellan*, 59 F.3d at 645.

14

43.     Finally, and perhaps most importantly, the reasonableness of Plaintiffs' counsels' hourly rates is stipulated by CTA, and the amount of fees is not opposed.  Plaintiffs' counsel shared full, unredacted billing reports with Defendants' counsel to confirm the reasonableness of the amount of fees requested, and the Parties have agreed to the rates and amounts requested.

## PROPOSED PROCEDURE FOR APPROVAL OF SETTLEMENT

44.     FLSA collective actions are not governed by the same procedural rules governing Rule 23 class actions. As a result, there is no specific requirement that the Court conduct a Fairness Hearing before approving of the Parties' Agreement. *See Stinson v. Area Disposal Serv., Inc.,* 2021 WL 6144670, at *3 (C.D. Ill. Oct. 7, 2021) ("District courts in the Seventh Circuit appear to agree that a fairness hearing is not necessary for FLSA opt-in cases.") (collecting cases).

45.     Because the Agreement is fair and reasonable on its face, and because it only impacts individuals who have already voluntarily consented to join this lawsuit and have agreed to be bound by any settlement entered into by the Named Plaintiffs, the Parties believe that a Fairness Hearing is not required in this case.

46.     However, in the event the Court deems it necessary or appropriate to conduct a Fairness Hearing, the Parties propose that the Court set a date approximately 45 days in the future for purposes of conducting a Fairness Hearing, in order to allow Plaintiffs' counsel sufficient time to provide notice of that hearing to all Opt-In Plaintiffs.

## REQUEST FOR RELIEF

WHEREFORE, for the foregoing reasons, the Parties respectfully request that the Court enter an order granting final certification of the conditionally certified class for settlement purposes, and approving the Parties' Proposed Final Settlement Agreement.

Dated December 15, 2023.

Respectfully submitted,                    Respectfully submitted,


/s/ *Matt Pierce*                          /s/ *Michael W. Duffee*
Amanda Clark                               Michael W. Duffee
Matt Pierce                                Thompson Coburn LLP
Asher, Gittler & D'Alba, Ltd.              55 East Monroe Street
200 W. Jackson Blvd. Suite 720             37th Floor
Chicago, Illinois 60606                    Chicago, IL 60603
312/263-1500 (phone)                       P: 312 580 2218
312/263-1520 (fax)                         F: 312 580 2201
arc@ulaw.com                               mduffee@thompsoncoburn.com
mjp@ulaw.com

*Counsel for Plaintiffs*                   *Counsel for Defendant*

16

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that the foregoing document was filed through the Court's CM/ECF system on December 15, 2023. Parties of record may obtain a copy through the Court's CM/ECF system.


/s/ Matt Pierce _____


17